﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 191024-39254
DATE: August 31, 2020

REMANDED

Entitlement to service connection for a bilateral eye disability is remanded.

REASONS FOR REMAND

The Veteran served in the Navy from June 1981 to August 1992.

Service connection for a bilateral eye disability was denied in a March 2017 rating decision. In March 2019, the Veteran filed an application to reopen the claim. In a June 2019 rating decision, the RO denied reopening the claim. The Veteran requested a higher level of review, and an August 2019 decision reopened the claim and denied it on the merits. Thereafter, the Veteran timely appealed by filing a Notice of Disagreement in October 2019 and choosing the direct review docket of the Appeals Modernization Act. The matter is now before the Board.

Entitlement to service connection for a bilateral eye disability is remanded.

The Veteran contends that he has a bilateral eye disability that was caused by proofreading messages to be sent out via Teletype during active duty. To support this claim, the Veteran points to vision testing that showed 20/20 bilateral vision on his entrance examination and 20/50 vision in the right eye and 20/15 vision in the left eye during his exit examination. 

The record does not show the diagnosis of any eye disability during service to which the Veteran’s reduced vision could be attributed. The Veteran submitted an Eye Conditions Disability Benefits Questionnaire relating to his current eye condition from a private optometrist in 2019, but he has not undergone a VA examination. There is a current diagnosis, as well as evidence of reduced vision at the time of separation from service, but the evidence contains no medical opinion relating the current eye disability to service. As such, there is insufficient evidence to render a decision. This represents a pre-adjudication error of the duty to assist. VA's duty to assist includes providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The matter is REMANDED for the following action:

Refer the Veteran’s claims file for review to an appropriate clinician to determine if a current eye disability had its onset in service or is otherwise related to service. The claims file must be made available to the examiner for review. If the examiner finds that an in-person examination is needed, then schedule the Veteran for a VA examination. If an examination is scheduled, all required diagnostic tests must be conducted.

To assist in a review of the claims file, the examiner is informed of the following facts with citations in the record, when applicable:

• The Veteran had active duty from June 1981 to August 1992. 

• The Veteran contends that he has a bilateral eye disability that was caused by proofreading messages to be sent out via Teletype during active duty. To support this claim, the Veteran points to vision testing that showed 20/20 bilateral vision on his entrance examination and 20/50 vision in the right eye and 20/15 vision in the left eye during his exit examination.

• A June 1981 Report of Medical Examination performed at service entrance shows that clinical evaluations of the eyes, ophthalmoscopic, pupils, and ocular motility were normal. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 1 (items #24–27).

• A July 1981 service treatment record shows that the Veteran had 20/20 vision, bilaterally. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 2.

• A March 1988 Report of Medical Examination shows that clinical evaluations of the eyes, ophthalmoscopic, pupils, and ocular motility were normal. The Veteran’s distant and near visions were documented as 20/20, bilaterally. Field of vision was documented as full. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 5 (items #24–27, 59–69).

• A March 1988 Report of Medical History shows the Veteran denied a history of eye trouble. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 7 (item #11, first column).

• A March 1989 Report of Medical History shows the Veteran denied a history of eye trouble. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 3 (item #11, first column).

• A June 1991 Report of Medical Examination shows that clinical evaluations of the eyes, ophthalmoscopic, pupils, and ocular motility were normal. The Veteran’s distant vision was documented as 20/20, bilaterally. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 11 (items #24–27, 59).

• A June 1991 Report of Medical History shows the Veteran denied a history of eye trouble. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 9 (item #11, first column).

• A July 1992 Report of Medical Examination performed at service separation shows that clinical evaluations of the eyes, ophthalmoscopic, pupils, and ocular motility were normal. The Veteran’s distant vision was documented as 20/50 in the right eye and 20/15 in the left eye. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 16 (items #24–27, 59).

• A July 1992 Report of Medical History shows the Veteran denied a history of eye trouble. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at p. 13 (item #11, first column).

• A November 2019 Eye Conditions Disability Benefits Questionnaire performed by an optometrist shows the optometrist diagnosed glaucoma suspect (with date of diagnosis in August 2016), dry eye (with date of diagnosis in May 2017), and type II diabetes mellitus (with date of diagnosis in May 2017). The examiner also documented clinical findings throughout the examination report. See VBMS entry with document type, “Disability Benefits Questionnaire (DBQ) – Veteran Provided,” receipt date 07/29/2019, at pp. 17–25.

• VA treatment records show diagnoses of glaucoma and type II diabetes mellitus. See VBMS entry with document type, “CAPRI,” receipt date 06/15/2019, p. 1.

• The Veteran is not service connected for type II diabetes mellitus.

• The examiner’s review of the record is NOT restricted to the evidence listed above. This information is provided in an effort to assist the examiner in locating potentially relevant evidence.

Following a review of the claims file, the examiner is asked to address the following issues:

(a.) The VA examiner is asked to diagnose all current eye disabilities. 

(b.) For each diagnosis, the examiner is asked to opine whether it is at least as likely as not (a 50 percent probability or greater) that the Veteran's eye condition(s) had its onset during, or is otherwise related to, the Veteran’s period of active duty from June 1981 to August 1992? Upon what facts and medical principles do you base this conclusion?

A full rationale must be provided for all medical opinions given. If the examiner is unable to provide an opinion without resorting to mere speculation, he or she should explain why this is so. The examiner shall then explain whether the inability to provide a more definitive opinion is the result of a need for more information and indicate what additional evidence is necessary, or whether he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Wonderling, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.